O:\Troy\2013 Orders\hannah sj 11-1172-op.docx

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**ALVIN O. HANNAH,**

      **Plaintiff**,

    -vs-                                       **Case No. 11-C-1172**

**CITY OF MILWAUKEE,**

      **Defendant**.

---

## DECISION AND ORDER

---

Alvin O. Hannah ("Hannah" or "Officer Hannah"), a City of Milwaukee police officer, alleges that the City retaliated against him by restricting his opportunities for overtime work and pressuring another police officer into filing a complaint against him after he filed a charge with the Equal Employment Opportunity Commission ("EEOC") and sent several letters to Chief of Police Edward Flynn. The City moves for summary judgment. This motion is granted.

## BACKGROUND

The Milwaukee Police Department entered into an agreement with the Milwaukee Brewers to provide police officers as security for Miller Park during baseball games. Working at Miller Park and other special events is a voluntary overtime "extra duty" opportunity for MPD officers. Officers working at Miller Park are compensated by the Brewers. Overtime and extra duty is at the exclusive administrative discretion of the Chief of Police. Officer Hannah does not have a

contract with the City for assignment of overtime. In the fall of 2009, Lieutenant Klusman of the Tactical Planning and Logistics Unit of MPD was assigned to oversee the staffing of special events, including the security functions for the Brewers at Miller Park.

On September 3, 2009, Lieutenant Klusman approved Hannah's overtime request to work at a Brewers game on September 24, 2009. Hannah was instructed to report for duty at 5:15. On the evening of the game, Hannah was assigned to watch the right field gate as fans entered Miller Park. Hannah was instructed to be at his gate by 5:30.

Sometime after 5:30, Sergeant Richard Jack, one of the supervising sergeants at Miller Park on September 24, 2009, spotted Hannah and Officer Ronald Brown chatting at the command post. Sergeant Jack directed the men to go back to their gates. At 5:45, Jack began checking the gates. All officers were at their gates except for Hannah and Brown. When Jack attempted to contact Hannah and Brown by radio, he got no response.

Brewers Security Supervisor Matthew Kenny asked Sergeant Jack why there were no officers at the right field or home plate gates. Jack responded that he was "working on it" and continued to try to contact Hannah and Brown via radio.

After 6:00, Hannah and Brown responded. Sergeant Jack told them to report to the command center. After Jack questioned Hannah and Brown about their absence from their assignments, Brown apologized to Jack. Jack felt that Hannah did not take

responsibility for his actions.

At 6:12 p.m. on September 24, 2009, Kenny sent an email to Lieutenant Klusman stating, "I had to place a phone call to get officers to gates this evening—we did not have coverage at all gates until after 6 p.m. In light of the safety concerns raised over the past few days this is unacceptable." Kenny asked Klusman to look into the matter.

The next morning Lieutenant Klusman asked Sergeant James Sobek, the commanding officer in charge at Miller Park on September 24, 2009, to provide an explanation. Sergeant Sobek responded that Officer Brown had not been at his post until Sergeant Jack checked on him, and that Jack had caught Brown and Hannah talking an hour later. Sobek reported that Jack had told Hannah and Brown to return to their posts. Later that morning, Klusman met with Jack, who repeated his account that Hannah and Brown had not been at their posts until they were directed, over a half hour late.

On September 25, 2009, Lieutenant Klusman sent Kenny an email apologizing for the incident and indicating that he understood the gravity of the situation. Kenny replied that he appreciated the apology, and that one of the sergeants at the game had assured him that "the staff assigned to the gates that went MIA were lambasted."

Lieutenant Klusman then decided to make Hannah and Brown ineligible for future assignments to special events overtime. Klusman did not intend to assign Hannah to overtime until he was satisfied "that P.O. Hannah knew what he did was

wrong and that it wouldn't happen again." Because it was Klusman's practice at the time, Klusman did not tell Hannah or Brown that they had become ineligible. Instead, Klusman planned on informing the officers of their punishment and determining its length when they asked why they were no longer assigned to special events. Hannah and Brown never asked Klusman why they were no longer assigned to special events. Klusman has suspended several other police officers from special events overtime for leaving their posts while on duty including, Brown, George Schad, and Michael Burgos.

In April of 2010, Lieutenant Klusman retired from MPD. Lieutenant Alan Johnson replaced Klusman. Johnson suspended Rick Bungert, Adrian Harris, and Shirley Lewis from special event overtime.

On May 24, 2010, Hannah wrote a letter to Chief Flynn complaining that he was not receiving special events overtime assignments. Hannah referred to an April 1, 2010 MPD memorandum that stated that overtime assignments should be scheduled by seniority. Hannah told Flynn that since April 1, 2010 he had been informed by less senior officers that they had received assignments. Hannah sent copies of the letter to various public officials including Milwaukee Mayor Tom Barrett, MPD Human Resources Director Valerie Williams, and EEOC Investigator Donna Brey.

On July 30, 2010, Inspector of Police John M. Hagan sent Hannah a memo informing him that he was disqualified from special events overtime because he had abandoned his post when he had been assigned to work at Miller Park on September

- 4 -

24, 2009, and that "when asked regarding [his] dereliction of duty [he] spoke with a lack of candor and failed to take responsibility for [his] actions."

On August 1, 2010, Hannah wrote another letter to Flynn "regarding continued departmental retaliation against [him] for filing a Federal complaint with the [EEOC] and [his] pending case in Federal court." Hannah claimed that Hagan's memo was malicious and that it defamed his character.

In mid-August of 2010 Johnson informed Police Officer Kathleen Kovacic, one of the officers in the Tactical Planning and Logistics Units that made overtime assignments, that Hannah was eligible to work Brewers games.

On September 1, 2010, Hannah filed a second charge with the EEOC alleging that the City retaliated against him for filing his October 2008 EEOC complaint by not assigning him to work overtime at Brewers games.

On March 16, 2011, Hannah sent a third letter to Flynn, accusing Kovacic of passing him up for special event overtime in order to "giv[e] games to her favorite officers."

On April 29, 2011, Detective JoAnne E. Blake from the Professional Performance Division of the MPD interviewed Hannah about a complaint received from another police officer, Barbara Robinson. Blake told Hannah that this was a criminal investigation regarding theft and fraud and she advised him of the allegations against him.

On May 10, 2011, Blake informed Robinson that the District Attorney's Office

had determined that the dispute between Robinson and Hannah was a civil matter between the parties.

On June 3, 2011, Hannah and Robinson were informed that the investigation resulting from Robinson's complaint was formally closed. The City took no action against Hannah.

On September 29, 2011, the EEOC informed Hannah that the investigative file in his case was "absent evidence to show that there was a violation of Title VII." The EEOC issued Hannah a notice of dismissal of his charge of discrimination and retaliation and issued him a right to sue letter.

## ANALYSIS

The Court will grant a motion for summary judgment when the moving party shows that there is no genuine dispute as to any material fact and is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court views the facts in the light most favorable to Hannah, the non-movant, resolving all evidentiary disputes in his favor, and according him the benefit of all reasonable inferences that may be drawn from the record. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court will find a genuine issue of material fact only if there is "enough evidence that a reasonable jury could return a verdict in favor of the nonmoving party." *Collins v. Am. Red Cross*, 715 F.3d 994, 997 (7th Cir. 2013).

Hannah alleges claims under Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. The Court will address the Title VII and § 1981 claims simultaneously because

"the same standards governing liability under Title VII apply to section 1981." *Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1035 (7th Cir. 1998). Title VII prohibits retaliating against an employee "because he has opposed any practice made an unlawful employment practice by [this subchapter,] or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [this subchapter.]" *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1106 (7th Cir. 2012) (citing 42 U.S.C. § 2000e—3(a)).

In his amended complaint, Hannah alleges that the City retaliated against him by pressuring Robinson into filing a complaint against him. However, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge. *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). There must be a "reasonable relationship between the allegations in the charge and the claims in the complaint," and the claim in the complaint must "reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Id.* With regard to the first aspect of this analysis, "the EEOC charge and the complaint must, at a minimum, describe the *same conduct* and implicate the *same individuals*." *Id.* at 501 (emphasis original).

Hannah's September 1, 2010 EEOC charge stated:

> I have worked for the Respondent for a number of years and currently I rank #307 out of 1357 police officers. In an internal memorandum dated April 1, 2010 it was stated that overtime for special event assignments would be scheduled through a seniority-based fair sheet system. However, since that time I have signed up for over 72

- 7 -

Case 2:11-cv-01172-RTR   Filed 08/05/13   Page 7 of 12   Document 31

> special events with the Tactical Planning and Logistics Unit and have not received any assignments. On or about May 24, 2010, I complained to government officials and human resources about retaliatory behavior. Subsequently, on or about July 30, 2010, I was notified that I was disqualified from participating in any overtime with the Milwaukee Brewers during the current and any future contracts with them.
>
> I believe that I have been discriminated against in that I have been subjected to discriminatory terms and conditions of employment in that I have been denied overtime for special event assignments due to having filed an earlier EEOC charge on August 13, 2009, and subsequently filing a Federal Lawsuit, and due to my expressed opposition to discriminatory treatment, in violations of Title VII of the Civil Rights Act of 1964, as amended, including Section 704(a). (Pederson Aff. ¶ 21; Ex. 13.)

There is no reasonable connection between this charge and Hannah's amended claims. In the September 1, 2010 EEOC charge Hannah alleged that Sobek and Hagen retaliated against him by disqualifying Hannah from overtime opportunities. In the Amended Complaint, Hannah alleges that Blake retaliated against him by pressuring Robinson to file a criminal charge against Hannah. While both of these claims center around the City's retaliatory behavior, they are not related. They are different instances of different types of retaliation by different individuals. Even if both actions were motivated by Hannah's original EEOC filing and lawsuit, they are not reasonably connected. Because Hannah failed to exhaust his administrative remedies, the claim in his Amended Complaint is barred and must be dismissed. *Teal v. Potter*, 559 F.3d 687, 693 (7th Cir. 2009).

As for the retaliation claim in the original complaint, under the indirect method of proof, Hannah must make a *prima facie* showing of four elements: (1) he engaged

in statutorily protected activity; (2) he met his employer's legitimate expectations; (3) he suffered a materially adverse action; and (4) he was treated less favorably than some similarly situated employee who did not engage in the statutorily protected activity. *Vaughn v. Vilsack*, 715 F.3d 1001, 1006 (7th Cir. 2013). If Hannah satisfies all of these elements, the burden shifts to the City to offer a nondiscriminatory reason for the adverse action. *Id.* If the City identifies an "appropriate reason, the burden shifts back to the plaintiff to supply proof that the proffered reason is pretextual." *Id.*

The City concedes the first and third elements of the test; Hannah's complaint to the EEOC is unquestionably protected, and Hannah's ineligibility to attain overtime work is clearly an adverse action. However, the City contends that Hannah did not meet MPD's expectations and that he was not treated less favorably than fellow officers.

On September 24, 2009, Hannah was assigned to provide security at the right field gate at Miller Park, and was directed to be at the gate by 5:30. Hannah did not get to his assigned gate until after 6:00, and only after he was twice directed to go to his gate by Jack. Hannah did not respond to his radio, and he did not seem to take any responsibility for his actions. The Brewers noticed Hannah's absence and demanded that the MPD ensure that this sort of behavior did not happen again. Hannah certainly did not perform satisfactorily on that date.

Further, Hannah was not treated less favorably than other officers. Lieutenant Klusman suspended at least 3 other officers from special event overtime for reasons

- 9 -

similar to Hannah's behavior.  Brown was suspended because he was not at his post at Miller Park on September 24, 2009.  Schad was suspended for leaving his gate at a different Brewers game.  Burgos was suspended for leaving his assigned intersection during a parade.  It is clear that Hannah's punishment was not anything out of the ordinary; Hannah was not treated less favorably than similarly situated coworkers.

Because Hannah cannot show that he met MPD's expectations or that he was treated less favorably than similarly situated employees, he cannot establish a prima facie showing under the indirect method.

Under the direct method of proof, Hannah must show that he engaged in protected activity, that he was subjected to an adverse employment action, and that there was a causal link between the protected activity and the employment action. *Brown*, 700 F.3d at 1106.  Again, the City concedes the first two elements, but contends that Hannah cannot establish a causal link between his EEOC charge and letters to Flynn, and his suspension from special event overtime.

To prove a causal link, Hannah has two options: direct evidence, and what courts call a "convincing mosaic" of circumstantial evidence, which may include evidence of "suspicious timing, ambiguous statements oral or written . . . and other bits and pieces from which an inference of [retaliatory] intent might be drawn." *Hobgood v. Ill. Gaming Bd.*, --- F.3d ---, 2013 WL 3599498, at *7 (7th Cir. July 16, 2013).  Hannah has no direct evidence, and for circumstantial evidence, he relies only on suspicious timing, which "rarely is sufficient in isolation to support a case of

- 10 -

Case 2:11-cv-01172-RTR   Filed 08/05/13   Page 10 of 12   Document 31

illegal discrimination or retaliation." *Id.* at 8.

On September 3, 2009, the City assigned Hannah to work overtime at the September 24, Brewers game. This was after Hannah had filed both his EEOC charge (on October 15, 2008) and his federal lawsuit (on August 21, 2009). If there was any retaliatory motive, the City surely would not have granted Hannah's overtime request just two weeks after he filed a lawsuit. Hannah was not suspended from special event overtime until September 25, 2009, eleven months after Hannah filed his EEOC charge, one month after Hannah filed his federal suit, but just one day after Hannah's shift at Miller Park. In addition, Hannah was made eligible to work at special events again in mid-August of 2010, nearly a year before the district court dismissed Hannah's federal suit. Further, Hannah claims that his letters to Flynn alleging discrimination inspired his suspension. However, Hannah was suspended on September 25, 2009, eight months before his first letter to Flynn (dated May 24, 2010). Therefore, Hannah's letters could not have been the City's motive in suspending him.

Not only does Hannah's timing evidence demonstrate that there was no causal link between his protected activity and the adverse action, it seems to show that his EEOC charge and letters to Flynn had no bearing on his suspension. Therefore, Hannah cannot prove retaliation under the direct method.

All that remains is the Section 1983 claim, but Hannah fails to create an issue of fact as to whether he was denied overtime pursuant to an unconstitutional policy or

- 11 -

Case 2:11-cv-01172-RTR   Filed 08/05/13   Page 11 of 12   Document 31

custom, and there can be no *Monell* claim against the City without an underlying violation in any event. *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 505 (7th Cir. 2010).

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT** the City of Milwaukee's motion for summary judgment [ECF No. 15] is **GRANTED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 5th day of August, 2013.

                                              **BY THE COURT:**

                                              */s/ Rudolph T. Randa*
                                              **HON. RUDOLPH T. RANDA**
                                              **U.S. District Judge**